Filed 12/27/23  In re A.C. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re A.C., a Person Coming Under Juvenile Court Law. | B321960 c/w B326226 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 22CCJP00122B) |
| Plaintiff and Respondent, | |
| v. | |
| J.H., | |
| Defendant and Appellant; | |
| A.C., | |
| Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Michelle D. Pena, under appointment by the Court of Appeal, for Defendant and Appellant.

Liana Serobian, under appointment by the Court of Appeal, for Respondent.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————

## *INTRODUCTION*

Father appeals from the juvenile court's order removing daughter (A.C.) from his custody and the court's exit order granting him monitored visitation.  Respondents Department of Children and Family Services (Department) and mother contend that father does not have standing to appeal the custody order. Mother also argues that father's appeal is moot.  Finally, mother contends the  juvenile court's exit order was within its discretion.[1]

 We conclude the appeal is not moot.  As to father's standing we will assume, but not decide, that he may pursue the appeal, but we hold that father suffered no prejudice from the custody order. We also hold that the visitation order was not an abuse of discretion. We affirm both orders.

---

[1]     The Department takes no position on the propriety of the exit order.

### DISCUSSION[2]

On January 10, 2022, the Department filed a section 300 petition asking the juvenile court to assert jurisdiction over A.C. based on allegations that mental problems and aggressive behavior of A.C.'s half-brother limited mother's ability to care for A.C. and her two other half siblings.[3]

On May 19, 2022, the juvenile court sustained an amended petition. At the June 30, 2022, dispositional hearing, the juvenile court ordered A.C., then 12 years old, "removed" from father's custody. On January 4, 2023, the juvenile court terminated its jurisdiction over A.C. and issued an exit order with sole legal and physical custody to mother and monitored visits to father. Father appeals both orders.

### 1. Removal Order

Father contends the June 30, 2022, removal order was unnecessary and not supported by substantial evidence.

#### A. Standing and Mootness

As a threshold matter, the Department and mother urge that father lacks standing to appeal the removal order because (1) he did not have custody at the time of the order and (2) he is merely the biological, not the presumed, father and, therefore, not entitled to custody. We will assume for the purposes of

---

[2] The parties are familiar with the facts and procedural history, and this opinion does not meet the criteria for publication (Cal. Rules of Court, rule 8.1105(c)). We therefore resolve this appeal by memorandum opinion under Standard 8.1 of the Standards of Judicial Administration.

[3] The half-brother is mother's son and was born in 2009. None of A.C.'s half siblings is a party to this appeal.

3

further discussion that father has standing.  As for mother's argument that the appeal is moot, we find mother has failed to demonstrate that the appeal itself is moot as no intervening events have occurred to render the appeal moot.  (See *Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 405 [moot cases are those in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist].)

### B.    Any Error in the Court's Removal Order Was Harmless

Father contests the juvenile court order removing A.C. from his custody.  We conclude that, if the juvenile court erred (a point we do not decide), any error was harmless under father's own theory of the case.  Father urges that the juvenile court erred in removing A.C. from his custody because father "was noncustodial, making the removal order unnecessary."  The Department concedes the point.  Instead, the Department argues that, by father's own words, the error is harmless because, when the proceedings started, he did not have custody and, therefore, no error in purporting to remove custody from father could have prejudiced him.  We agree.  Father's custody status was not changed by the court's order.  On the unique facts of this case, before the order father did not have custody of A.C., and after the order he did not have custody of A.C.  An error in state law " 'generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.' " (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1073.) Here, father's status as a noncustodial parent was unchanged, and father suffered no prejudice.

4

## *2.* *The Exit Order Granting Father Monitored Visitation Was Within the Court's Discretion*

On January 4, 2023, the juvenile court terminated its jurisdiction over A.C. with an exit order granting sole legal and physical custody to mother and monitored visits to father. The order set the duration and frequency of the visits. Father argues that the juvenile court abused its discretion by not providing a way to "ensure enforceability" of father's right to monitored visitation with A.C. and by not specifying in the exit order how father could request unmonitored visits from the family court.

### A. Enforceability of Visitation Orders

When a juvenile court terminates jurisdiction, it has broad discretion to make exit orders concerning visitation. (§ 362.4; *In re J.M.* (2023) 89 Cal.App.5th 95, 112-113 (*J.M.*).) These orders remain in effect until modified or terminated by order of the family court. (§ 362.4, subd. (b); *J.M.*, at p. 112.) When a juvenile court makes an exit order, the juvenile court must look to the best interests of the child and consider the totality of the circumstances. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; *In re Chantal S.* (1996) 13 Cal.4th 196, 201.) We review the juvenile court's exit orders for abuse of discretion (*In re J.P.* (2019) 37 Cal.App.5th 1111, 1119; *In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095 (*Alexandria M.*)), and thus determine whether the juvenile court's order " ' "exceeded the bounds of reason." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *Alexandria M.*, at pp. 1095-1096.)

Father contends the court erred in not including some kind of enforcement mechanism in its exit order granting father visitation. Father's stated concern was that A.C. had steadfastly refused to speak with father, even in the face of prior visitation

orders.  At the outset, father has forfeited the argument. Father did not request an enforcement mechanism in the juvenile court; he asked for and received a visitation order.  "Absent a request, it is not the court's burden to sua sponte come up with a solution to the intractable problem of a child's steadfast refusal to visit a parent."  (*In re Sofia M.* (2018) 24 Cal.App.5th 1038, 1046.) " '[D]ependency courts "simply do not have the time and resources to constantly fine tune an order in response to the progress or lack thereof in the visitation arrangement, or in reaction to physical or psychological conduct which may threaten the child's well-being." ' "  (*Ibid.*, quoting *In re Julie M.* (1999) 69 Cal.App.4th 41, 51.)

Nor does father identify on appeal any particular enforcement mechanism the juvenile court should have included in its exit order.  Father's failure to raise the point below and his failure to develop it on appeal forfeits his argument.

If we were to consider the merits of father's argument, he would fare no better.  The juvenile court does not have the authority or discretion to impose a condition on the family court's ability to modify an exit order.  (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1456; but see *In re D.B.* (2020) 48 Cal.App.5th 613, 627.)  On the contrary, parties may seek the assistance of the family court to enforce dependency visitation orders.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 208 ["courts are often placed in the position of enforcing orders of other courts, even though the enforcing court could not have made the order in the first instance"].)

**B.     Adequacy of Information in the Exit Orders**

Father argues that the juvenile court was required to, but did not, "explain the circumstances" that led to its exit order

6

providing father only with monitored visitation. Observing that a family court must find "there has been a significant change of circumstances" before modifying a juvenile court's visitation order (§ 302, subd. (d)), father urges that this lack of information is prejudicial insofar as it may preclude him from proving "a substantial change of circumstances to obtain expanded visitation rights at a later time." Accordingly, father argues that the exit order must be reversed "with directions to order joint custody or at least clarify that [f]ather was nonoffending and provide directions for [f]ather and family court with specificity as to how he can prove a substantial change in circumstances." We disagree.

Although the juvenile court might not have expressly stated why it was ordering monitored visitation for father, we see no error in its failure to do so. Father again cites no authority for this proposition, instead relying on cases in which the juvenile court gave too much discretion to third persons to change visitation orders. The juvenile court at least implicitly found that the visitation it awarded was in A.C.'s best interests, and "the record is clear as to the circumstances" that warranted this finding. (See *In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248 [in the absence of a request for specific trial court findings "appellate courts . . . must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence"]; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 714 [no prejudice from lack of specificity of exit order given that the record showed the circumstances warranting it].)

The record shows that father lacked any significant relationship with A.C. and A.C. had continuously expressed her

7

desire to avoid contact with father. From this record, a family court will be able to discern whether there has been any future change in circumstances that warrants a modification of the visitation order.[4]

### DISPOSITION

The June 30, 2022, and the January 4, 2023, orders are affirmed.



RUBIN, P. J.

WE CONCUR:



BAKER, J.



KIM, J.

---

[4] Father cites *In re Anna T.* (2020) 55 Cal.App.5th 870 in passing, but the case is distinguishable. The juvenile court in that case declined to enter a proper exit order and instead purported to "revert[] to [an] original family law order," with some modifications as stated in a minute order. (*Id*. at pp. 874-875.) Here, the juvenile court issued a proper exit order.